Dorsey & Whitney LLP
2325 E. Camelback Rd., Ste. 300
Phoenix, Arizona 85016
TELEPHONE 602.735.2700

Gregory B. Collins (#023158)
collins.greg@dorsey.com
Brittany Gilbertson (#032641)
gilbertson.brittany@dorsey.com
Madison A. Burr (#037079)
burr.madison@dorsey.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Life Saver Pool Fence Systems, Inc., a Florida corporation, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Howard Holdings, Inc., a California corporation, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Life Saver Pool Fence Systems, Inc. ("Life Saver" or "Plaintiff"), by and through undersigned counsel, for its Complaint against Howard Holdings, Inc. hereby claims and alleges as follows:

### NATURE OF THE ACTION

1. In this action, Plaintiff seeks injunctive and monetary relief for acts of trademark infringement, false designation of origin and unfair competition under the laws of the United States, for unfair competition under the common law of the state of Arizona, and for tortious interference with business expectancy under the laws of the state of Arizona.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff Life Saver Pool Fence Systems, Inc. is a Florida corporation with its principal place of business in Delray Beach, Florida. Plaintiff manufactures, advertises, distributes and sells various types of pool fences.

3. Defendant Howard Holdings, Inc. is a California corporation with its principle place of business in Arizona. Upon information and belief, Defendant do business in Arizona under the trade names "A Safe Pool" and "The Pool Fence Warehouse".

4. Non-party Jason Howard the Director of Howard Holdings, Inc. Mr. Howard is currently a resident of the State of Arizona.

5. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

6. As alleged below, Defendant has subjected itself to the jurisdiction of this Court in three ways. First, Defendant's Director is Jason Howard, who is a resident of Arizona. Indeed, it is alleged upon information and belief that Mr. Howard operates the business out of his home in Arizona. Second, Defendant has brought suit twice in this district against Plaintiff Life Saver. Additionally, Defendant offers infringing products in this district.

7. Venue is proper under 28 U.S.C. § 1391 because Defendant performs, offers to sell, and sells within this district infringing products that are the subject of this action, and a substantial part of the events or omissions giving rise to this claim occurred in this district.

**PARTIES**

**FACTS COMMON TO ALL COUNTS**

A. **The Life Saver Difference.**

8. Plaintiff is a top-rated pool fence manufacturing company. Plaintiff has been in the pool fencing business for over thirty years and has distributed its products

throughout the United States and around the globe.

9. Plaintiff's products are widely recognized by pool safety experts and lawmakers as the premium layer of protection against toddler drowning- surpassing pool nets, alarms, and pool covers in terms of safety and convenience.

10. In fact, Plaintiff is the only pool safety fence company recognized by the US Consumer Product Safety Commission's Pool Safety Campaign as a Safety Leader, an extremely high honor bestowed only to organizations making a serious contribution to pool safety efforts nationwide.

11. Plaintiff offers consumers four types of pool fences: (1) the original Life Saver Pool Fence, (2) the Pool Barrier fence, (3) the Pool Corral, and (4) the Life Saver Pet Fence (collectively, the "Life Saver fences"). The Life Saver fences are all sold under the LIFE SAVER POOL FENCE registered trademark.

12. Each of the Life Saver fences are made from TEXTILINE® MESH transparent mesh material, which provides an unmatched tensile strength rating of over 387 pounds per square inch, nearly indestructible and completely guaranteed by a Lifetime Warranty.

**B.    The Protected LIFE SAVER POOL FENCE Word Mark.**

13. On February 13, 2018, Plaintiff filed a trademark application to register the word mark, "LIFE SAVER POOL FENCE", in order to market and sell the Life Saver fences.

14. Plaintiff's "LIFE SAVER POOL FENCE" word mark (the "LIFE SAVER Mark") was registered on June 4, 2019, at Registration No 5766827. A true and correct copy of the registered LIFE SAVER Mark is attached hereto as Exhibit A.

15. Plaintiff has invested substantial effort and money in the continuous use and promotion of its LIFE SAVER Mark.

16. Plaintiff offers its Life Saver fences using the LIFE SAVER Mark. Additionally, the LIFE SAVER Mark is prominently displayed on the company's website at the domain https://poolfence.com/, and is consistently featured in the company's sales,

advertising, promotions and sponsorship materials.

17. As a result, of Plaintiff's extensive use of its trademark, the LIFE SAVER Mark has become one of Plaintiff's most valuable assets and represents a substantial amount of goodwill.

18. Moreover, as a result of its extensive use of the LIFE SAVER Mark, Plaintiff's Life Saver fences are widely recognized by consumers for their superior quality and performance. For example, customer reviews for the Life Saver Pool Fence are cut-and-pasted below:

> "I had a great experience with this company. I did a lot of research about pool fences, and the companies that install them, I was confident that Life Saver had the best fence… Once I saw it installed and felt it, I could immediately see that it was a better quality fence than any other I've seen."

> "By the way, we love the fence, it is really easy to take down when entertaining with adults and it really is a 'life saver' to have with little toddlers and kids running around!"

> "Life Saver pool fence is truly a life saver, the peace of mind it brings by protecting the young ones is a blessing…the fence is professionally built, strong and pleasantly looking. Strongly recommend the installation of a Life Saver pool fence." *See* https://poolfence.com/customer-reviews/.

**C.    Defendant Unfairly Competes and Infringes on Plaintiff's Trademark.**

19. On or around April 1, 2008, Defendant's Director, Jason Howard, became an authorized dealer of Plaintiff's Life Saver fences.

20. Pursuant to the parties' dealership agreements, Mr. Howard was allowed to use the Plaintiff's trademarks while serving as an authorized dealer.

21. Also pursuant to the parties' dealership agreement, Mr. Howard was prohibited from competing with Plaintiff in the manufacturing, distribution, installation and sale of pool fences under the LIFE SAVER Mark.

22. Mr. Howard subsequently breached the dealership agreements by purchasing pool fences from Plaintiff's competitors and selling the competing fences.

23. Upon discovery of Mr. Howard's breach, Plaintiff terminated the parties'

dealership agreements and his license to sell Life Saver fences.

24. Following the termination of the Parties' dealership agreement, Mr. Howard was fully aware that he was not allowed to sell or market Plaintiff's Life Saver fences or use the LIFE SAVER Mark.

25. On or about March 12, 2014, Mr. Howard formed a California Corporation: Howard Holdings, Inc. The corporation originally did business under the name Jason Howard, Inc. According to the Arizona Corporation Commission website, Howard Holdings, Inc. ceased using the Jason Howard Inc. name in 2018, switching to Howard Holdings, Inc.

26. Howard Holdings, Inc. is registered to do business in Arizona.

27. The Arizona Corporation Commission lists Mr. Howard as the Director, Sole Shareholder and President of Howard Holdings, Inc. The Arizona Corporation Commission also lists Mr. Howard's address as 10115 E. Bell Rd., Suite 107, Scottsdale, Arizona 85260.

28. In April 2022, Plaintiff discovered that, despite Mr. Howard, Defendant's Director and sole Shareholder, being fully aware that neither he nor any company he controlled were not allowed to sell or market Life Saver fences, Defendant has continued to use the Life Saver name and the LIFE SAVER mark to promote their products in direct competition with Plaintiff.

29. Specifically, Mr. Howard and his company have marketed and sold competing pool fences using the Life Saver name.

30. Upon information and belief, Mr. Howard and his company have consistently and repeatedly solicited potential customers offering to sell "Lifesaver" pool fences.

31.   A screen shot of the text message that Mr. Howard and his company sent to a potential customer is below:



32. A screen shot of another text message that Mr. Howard and his company sent to a potential customer is below:



33. Additionally, Mr. Howard and his company have used a variation of the LIFE SAVER Mark, "LF", to package and ship their infringing products to consumers, attempting to convey to customers that they are receiving a genuine Life Saver product. A photo of the Defendant's product, in the "LF GATE" packaging, appears below:



34. By passing off their pool fences as Life Saver fences, Mr. Howard and his company knowingly and intentionally misled consumers and caused market confusion.

35. In fact, Plaintiff has already observed actual confusion in the marketplace. Prospective consumers looking for Life Saver fences have inadvertently ordered non-Life Saver fences from Mr. Howard and his company.

36. Defendant seeks to create and further that confusion when communicating with customers and potential customers is below. For example, in the text string below the customer attempts to order the Life Saver Pool Fence from Mr. Howard and his company, asking Mr. Howard to "Get me the life Saver one." In response, Mr. Howard and his company fail to correct the consumer's mistaken belief that he would be getting a genuine Life Saver Pool Fence. Instead, Mr. Howard simply ships him one of their imitation "LF Gates."



37. By using the Life Saver name to confuse and mislead consumers into believing that Mr. Howard and his company's pool fences are manufactured and distributed by Plaintiff, or are associated or connected with Plaintiff, Mr. Howard and his company have generated profits and other financial gain off of Plaintiff's trademark, business reputation and goodwill.

38. Mr. Howard and his company's infringement was done intentionally, knowingly and willfully, and has significantly harmed Plaintiff's business reputation and goodwill.

39. Furthermore, Mr. Howard and his company's infringement is causing irreparable harm to Plaintiff and will continue to do so unless restrained by this Court.

**D.    The Related Litigation.**

40. On September 13, 2022, Life Saver filed a lawsuit in Arizona Federal

District Court asserting claims against Mr. Howard and his wife (pursuant to Arizona community property laws). That lawsuit asserts that same claims against Mr. Howard that are asserted in this Complaint against his company Howard Holdings, Inc. That action has been assigned Case No. 2:22-cv-01556-SPL (hereinafter "the Related Action").

41. The Complaint and Amended Complaint in the Related Action both alleged that Mr. Howard was doing business in Arizona under the trade names "A Safe Pool" and "The Pool Fence Warehouse."

42. In response to the Complaint and Amended Complaint, Mr. Howard's Answer and Counterclaim denied liability, but the Answer failed to identify Howard Holdings, Inc. as the party that made the alleged infringing sales at issue in the Amended Complaint.

43. On April 7, 2023, in that action, the parties filed a Joint Case Management Statement with the Court. At no point in the Joint Case Management Statement did Mr. Howard identify or asset any defense related to the fact that the alleged infringing sales were made by Howard Holdings, Inc.

44. In response to discovery requests served on Mr. Howard and in connection with meet-and-confers related to those responses, for the first time, on August 11, 2023, Mr. Howard's counsel argued that the alleged infringing sales were made by his company, Howard Holdings, Inc. Mr. Howard's counsel refused to consent to the filing of a Second Amended Complaint in the Related Action; accordingly, this lawsuit was necessary.

**COUNT I**

**(Trademark Infringement)**

**(15 U.S.C. § 1114(1)(a))**

45. Plaintiff incorporates by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

46. Plaintiff is the owner of all rights and title to, and has valid protectable prior rights in, the LIFE SAVER Mark.

47. Plaintiff's LIFE SAVER Mark, and the associated goodwill are of significant value.

48. Without Plaintiff's authorization or consent, and having full knowledge of Plaintiff's prior rights in the LIFE SAVER Mark, Mr. Howard and his company have used and continue to use the Life Saver name to infringe on the LIFE SAVER Mark. Specifically, Defendant has used the Life Saver name in connection with the sale, distribution and advertising of their competing pool fences.

49. Mr. Howard and his company's conduct has caused actual confusion to consumers and is likely to continue to cause confusion, mistake or to deceive the public as to an affiliation, connection, or association of Mr. Howard and his company's and Plaintiff, and as to the origin, sponsorship, or approval of Mr. Howard and his company's pool fences by Plaintiff, to the damage and detriment of Plaintiff and its reputation, goodwill, and sales.

50. Mr. Howard and his company's wrongful conduct has been and continues to be willful, deliberate, malicious, intended to injure, and without regard for Plaintiff's rights in the LIFE SAVER Mark.

51. Plaintiff has sustained damages as a direct and proximate result of Mr. Howard and his company's infringement of the LIFE SAVER Mark in an amount to be proven at trial.

52. Plaintiff is entitled to an award of actual damages, Mr. Howard and his company's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest pursuant to 15 U.S.C. § 1117.

53. Plaintiff is also entitled to an injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT II

**(False Designation of Origin and Unfair Competition)**

**(15 U.S.C. § 1125(a))**

54. Plaintiff incorporates by reference the allegations contained in the

proceeding paragraphs as if fully set forth herein.

55. At the time of committing the acts herein alleged, Mr. Howard and his company had full knowledge of Plaintiff's prior rights in and ownership of the LIFE SAVER Mark and the Life Saver fences.

56. Mr. Howard and his company have created a false designation of origin by using in commerce, without Plaintiff's permission, the Life Saver name in connection with similar products, causing confusion and mistake among customers and the public and by deceiving them into believing that Defendant's pool fences are associated with, sponsored by or approved by Plaintiff.

57. By engaging in the aforesaid acts, Defendant is unfairly competing with Plaintiff.

58. Defendant has willfully, intentionally, deliberately, and knowingly confused customers concerning the source or sponsorship of their products in violation of 15 U.S.C. § 1125(a), and Defendant continues to do so in blatant disregard for Plaintiff's rights.

59. By their actions, Mr. Howard and his company have injured and violated the rights of Plaintiff in an amount to be determined at trial.

60. Mr. Howard and his company have also irreparably injured Plaintiff. Such irreparable injury will continue unless Defendant is enjoined, pursuant to 15 U.S.C. § 1116, from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

## COUNT III

**(Unfair Competition and Palming Off Under Arizona Common Law)**

61. Plaintiff incorporates by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

62. "The common law doctrine of unfair competition is based on principles of equity" and "encompasses several tort theories, such as trademark infringement, false advertising, 'palming off,' and misappropriation." *Fairway Constructors, Inc. v. Ahern,*

193 Ariz. 122, 124, ¶9, 970 P.2d 954, 956 (Ct. App. 1998).

63. Defendant's actions constitute unfair competition under Arizona common law in that Defendant's use of the Life Saver name to infringe on Plaintiff's LIFE SAVER Mark is a false representation causing consumers to be confused.

64. By using the Life Saver name, Defendant is "palming off" their business as Plaintiff; Defendant is knowingly and intentionally attempting to cause consumers to believe that Defendant's business is that of Plaintiff.

65. Defendant's continuing and knowing deception of the public constitutes unfair competition under the common laws of the State of Arizona.

66. Defendant's unfair competition is and has been knowing, intentional, and in bad faith.

67. As a direct and proximate result of such conduct, Plaintiff has suffered, and will continue to suffer, monetary loss in amount to be proven at trial and irreparable injury to Plaintiff's name, business reputation and goodwill.

68. Defendant's wrongful conduct was willful, deliberate, malicious, and intended to injure Plaintiff. Accordingly, Plaintiff is also entitled to punitive damages in amounts yet to be determined.

## JURY DEMAND

69. Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby respectfully requests that this Court:

A. Enter an injunction enjoining Defendant, its officers, directors, employees, agents, licensees, subsidiaries and affiliated companies, successors and assigns, and any and all persons in active concert or participation with any of them, from:

    1. Any unauthorized use of the LIFE SAVER Mark, including without limitation any colorable imitation or confusingly similar variation of the LIFE SAVER Mark, in connection with the promotion, advertising, performance, or sale of competitive or related products and services by

Defendant;

2. Engaging in any conduct suggesting or tending to suggest that any product or service promoted, advertised, performed, or offered for sale by Defendant originates from or is directly or indirectly sponsored by, approved by, affiliated with, or connected to Plaintiff; and

3. Conveying the impression to the public through communications, displays, advertising, packaging or otherwise that any product or service offered by Defendant originates from or is directly or indirectly sponsored by, approved by, affiliated with, or connected to Plaintiff;

B. Award Plaintiff its actual damages and Defendant's profits from Defendant's wrongful acts;

C. Award Plaintiff its costs of suit and reasonable attorneys' fees;

D. Award Plaintiff punitive damages, pursuant to Arizona state law;

E. Award any other legal or equitable remedies to which Plaintiff may be entitled, including all remedies provided for in 15 U.S.C. § 1117(a) and Arizona state, and under any other Arizona state statutory or common law;

F. Award Plaintiff interest and post-judgment interest; and

G. Award such other and further relief as this Court deems just and proper.

DATED this 25th day of August 2023.

DORSEY & WHITNEY LLP

By: *s/ Gregory B. Collins*
Gregory B. Collins
Brittany Gilbertson
Madison Burr
2325 East Camelback Road, Suite 300
Phoenix, Arizona 85016

*Attorneys for Plaintiff*

13